**Karla MERRICK, Appellant**

v.

**Bonnie HELTER, Individually and as Independent Executor of the Last Will and Testament of J.C. Cole, Deceased, Appellee**

NO. 03-14-00708-CV

Court of Appeals of Texas, Austin.

Filed August 18, 2016

Paul M. Bohannon, Bohannon Legal, P.L.L.C., Spring, TX, for Appellant.

M. Alex R. Tandy, Law Office of Alex R. Tandy, P.C., North Richland Hills, TX, for Appellee.

Before Justices Puryear, Pemberton, and Bourland

## OPINION

Bob Pemberton, Justice

Two days before J.C. Cole died in 2013, he signed a will that left no property to his only child, appellant Karla Merrick, and explicitly disinherited her. After Cole died and his will was admitted to probate, Merrick filed a contest seeking to invalidate the will and clear the way for her to inherit through intestate succession.[1] Merrick's principal theory was that her disinheritance by Cole violated "public policy"—namely Texas's strong public policy against sexual abuse of children. As her factual predicate for that theory, Merrick alleged that Cole had abused her sexually while she was a teenager and had disinherited her after she confronted him with those allegations decades later.

Merrick's allegations (which also included accusations against the late Cole of habitual drunkenness, wife-beating, and "violent conduct toward minorities [and] women") were vigorously disputed by the independent executor of Cole's will, appellee Bonnie Helter,[2] who asserted not only a general denial but also counterclaims alleging that Merrick had filed a false and groundless pleading knowingly in an attempt to harass, intimidate, and "defraud" Helter into abandoning the probate proceedings. But the probate court never had occasion to resolve these disputed facts— nor do we. This is so because Helter also filed a motion to dismiss under Texas Rule of Civil Procedure 91a contesting whether Merrick's "public policy" theory would be a viable basis in Texas law for the relief she sought even if Merrick's version of the facts were true. The probate court granted Helter's Rule 91a motion and dismissed Merrick's claim.[3] Any remaining claims of the parties were nonsuited to make the dismissal final and appealable, and Merrick perfected this appeal.[4] We will affirm.

1. Although the amount of her potential inheritance is not mentioned in her live pleading, Merrick indicates in her appellate briefing that $15 million is at stake.

2. Helter was also a half-sister to Cole.

3. The dismissal order does not include an accompanying award of attorney's fees and costs to Helter as Rule 91a requires, see Tex. R. Civ. P. 91a.7, but Helter has not perfected an appeal to challenge that omission. See Tex. R. App. P. 25.1(c) (notice of appeal required of party in order to "alter the trial court's judgment or other appealable order" in that party's favor).

4. Alongside her "public policy" claim, Merrick had asserted a theory that Cole had lacked testamentary capacity, and in response Helter had moved for and obtained only a partial dismissal of that claim under Rule 91a. In an attempt to make the dismissal order final and appealable, Merrick nonsuited her testamentary-capacity claim shortly before filing her notice of appeal. Subsequently, after Merrick had filed her notice of appeal and the parties had filed briefing, Helter nonsuited her counterclaims, thereby making the dismissal order final and appealable. See Tex. R. App. P. 27.1 ("In a civil case, a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the

The relatively recent innovation of Rule 91a permits a party, with exceptions not applicable here, to "move to dismiss a cause of action on the grounds that it has no basis in law or fact."[5] As indicated, Helter relied here solely on a "no basis in law" ground—namely, that Merrick's "public policy" challenge to Cole's will is not viable under Texas law even if Merrick's factual allegations are presumed true.[6] Dismissal on a "no basis in law" ground is appropriate "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought."[7] Whether this standard is met "depends 'solely on the pleading of the cause of action.' "[8] Our focus is the *facts* alleged by the claimant, not any legal conclusions the claimant asserts.[9] "We review the merits of a Rule 91a motion *de novo* because the availability of a remedy under the facts alleged is a question of law."[10] In this respect, as the Texas Supreme Court has observed, a Rule 91a "no basis in law" ground is somewhat analogous to a plea to the jurisdiction that challenges whether a claimant has pled facts legally sufficient to invoke jurisdiction.[11]

The right to devise property is a statutory creation[12] and, as Merrick acknowledges, the general rule is that "[a] person of sound mind has a perfect legal right to dispose of his property as he wishes."[13] In fact, the Legislature has provided affirmatively that a testator may disinherit an heir if he or she desires.[14] In challenging Cole's disinheritance of her nonetheless, Merrick relies on a line of cases holding (or at least stating) that certain terms in wills may be deemed unenforceable on "public policy" grounds.[15] Merrick insists that this case comes within

---

appeal."), 27.2 (affording discretion to appellate court to give effect to other premature actions "as if they had been taken after the order was signed").

**5.** Tex. R. Civ. P. 91a.1.

**6.** *See id.* R. 91a.2 (requiring that motion must, inter alia, "state specifically the reasons the cause of action has no basis in law, no basis in fact, or both").

**7.** *Id.* R. 91a.1.

**8.** *City of Dallas v. Sanchez,* No. 15–0094, 494 S.W.3d 722, 724–25, 2016 WL 3568055, at *1, 2016 Tex. LEXIS 615, at *2 (Tex. July 1, 2016) (per curiam) (quoting Tex. R. Civ. P. 91a.6).

**9.** *See Kidd v. Cascos,* No. 03–14–00805–CV, 2015 WL 9436655, at *2, 2015 Tex.App. LEXIS 12841, at *6 (Tex.App.–Austin Dec. 22, 2015, no pet.) (mem. op.) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *City of Austin v. Liberty Mut. Ins.,* 431 S.W.3d 817, 826 (Tex.App.–Austin 2014, no pet.)).

**10.** *Sanchez,* 494 S.W.3d at 724–25, 2016 WL 3568055, at *1, 2016 Tex. LEXIS 615, at *2–3.

**11.** *See id.* at *1, 2016 Tex. LEXIS 615, at *3 (citing *Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004)); *see also Creedmoor–Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality,* 307 S.W.3d 505, 516 (Tex.App.–Austin 2010, no pet.) (claimant "has the initial burden of alleging *facts* that affirmatively demonstrate" court's jurisdiction; claimant's asserted legal conclusions not controlling).

**12.** *See, e.g., Wich v. Fleming,* 652 S.W.2d 353, 355 (Tex.1983).

**13.** *Rothermel v. Duncan,* 369 S.W.2d 917, 923 (Tex.1963).

**14.** *See* Tex. Est. Code § 251.002(b) ("A person who makes a last will and testament may . . . disinherit an heir . . . .").

**15.** *See Marion v. Davis,* 106 S.W.3d 860, 865–66 (Tex.App.–Dallas 2003, pet. denied); *Stewart v. Republic Bank, Dallas, N.A.,* 698 S.W.2d 786, 787–88 (Tex.App.–Fort Worth 1985, writ ref'd n.r.e.); *Perry v. Rogers,* 52 Tex.Civ.App. 594, 114 S.W. 897, 899 (Tex.Civ.App.–Dallas 1908, no writ).

this "public policy exception." Her reasoning distills to the following four asserted propositions:

(1) Texas public policy strongly condemns sexual abuse, particularly sexual abuse of minors, or conduct aimed at concealing or aiding it;

(2) In the posture of this appeal, we must credit as true the factual allegations in Merrick's live pleading;

(3) Her live pleading, Merrick insists, alleges that Cole used his will and her disinheritance from it as a means of "silencing" her from divulging the sexual abuse and subsequently "punishing" her for confronting him about it; and

(4) Ergo, the will provision disinheriting her runs afoul of the aforementioned Texas public policy, rendering the provision unenforceable.

Although Merrick's first two propositions are unassailable—indeed, as Merrick emphasizes, Texas law and public policy are understandably "clear, unequivocal, and unbending" in their hostility toward sexual abuse of minors [16]—Merrick falters on the remaining two.

■ The legal barriers to Merrick's asserted right to relief begin with the principles that govern construction of wills. Similar to other written instruments, courts construe wills in accordance with the manifest intent of the drafter—the testator—as ascertained from the objective meaning of the language actually used within the "four corners of the will," not from perceptions of the testator's subjective intent.[17] Only if there is ambiguity or uncertainty in the meaning of a term used can extrinsic evidence come into play.[18] Here, the will provision that Merrick challenges—which states simply, "It is my intention to make no provision in this Will for [Merrick] or her heirs, whom I have no relationship with in the past or at this time"—could not be clearer in its material terms: Cole intended that Merrick not inherit anything from him. Merrick's "public policy" challenge is grounded entirely in asserted conditions or limitations that appear nowhere in the will's text and allegations about Cole's subjective motives in drafting the will as he did. The sole language in the will that might conceivably be read to relate to Merrick's "public policy" theory, the clause adding Cole's disclaimer of any "relationship" with the disinherited Merrick, would be in the nature of a denial of the sexual misconduct Merrick alleges rather than any support for the theory.

■ In short, construing Cole's will in the manner Texas law requires, Merrick's "public policy" theory is a non-starter. Tellingly, the "public policy" cases on which Merrick relies each addressed the legality of forfeiture provisions and conditions that appeared explicitly in a will's text.[19] They thus provide no support for looking to claimed extratextual intent or motive as Merrick urges here. To the contrary, these cases affirm that unless an explicit provision of a will can be said to run afoul of "public policy," Texas law

16. E.g., the many Penal Code provisions proscribing such conduct.

17. See, e.g., Hysaw v. Dawkins, 483 S.W.3d 1, 7 (Tex.2016).

18. See id. at 8.

19. See Marion, 106 S.W.3d at 863, 865–67 (upholding forfeiture provision in codicil triggered by placement of testator's wife in nursing home); Stewart, 698 S.W.2d at 787–88 (invalidating forfeiture provision triggered by appointment of certain individuals as guardians of minor children; provision deemed to infringe on judicial power to appoint guardians for minors); Perry, 114 S.W. at 899 (upholding forfeiture provision triggered by heirs contesting the will).

"confer[s] upon the testator full power freely to make any disposition he desire[s] to make of his property," and "whether he exercised the right he possessed wisely or unwisely, justly or unjustly, is not for the courts to determine."[20]

Even if we were to look beyond the will's "four corners," Merrick failed to allege facts to support any theory that Cole conditioned Merrick's inheritance on her remaining silent about the claimed sexual abuse. Even when amplified by reasonable inferences in her favor,[21] the facts that Merrick pleaded would fall short of establishing that Cole used disinheritance or threat thereof to induce "silence" and conceal his conduct. Instead, Merrick pleaded that Cole inflicted "many" acts of sexual indecency or abuse upon her during her teenage years[22] that went unreported by her out of fear "for her life and personal safety" in light of what she alleged to be Cole's violent tendencies. During the decades that followed, Merrick further pleaded, she "made every effort to maintain a relationship with her father" and "loved him beyond all his faults." Her pleadings also allude to Cole having "ke[pt] her up to date on his financial affairs" for "years" and—drawing reasonable inferences from the pleaded facts in Merrick's favor—that Cole had included Merrick in an earlier version of his will or estate plan.

The will became an issue, according to Merrick's pleadings, after she, "at about age 45 ... chose to confront her father, asking why he had done these things,"

referring to the sexual abuse she had alleged. While Cole's initial reaction was to express "remorse" and admit his conduct, Merrick alleged, Cole soon thereafter "entered a denial phase" and "began punishing [her] emotionally and financially." At this juncture, Merrick complains, Cole "removed her from his will" and "continued this punishing right into the current will, excluding her from the estate and even denying that they had a legitimate father-daughter relationship of any kind." While Merrick can be credited with pleading that Cole used disinheritance to "punish" her after-the-fact for accusing him of sexual abuse, she does not allege any facts that would show the additional use of disinheritance prospectively as a vehicle to "silence" her.

But more critically, Merrick's arguments erroneously presume that she has any entitlement to an inheritance from Cole in the first instance. On the contrary, as this Court recently observed in *Anderson*, "a prospective beneficiary's interest in receiving an inheritance is merely in the nature of an expectancy or hope," and it was for this reason we held that an inheritance falls short of the type of protected contractual or economic interest whose disturbance could be actionable through the tortious-interference tort.[23] Undergirding that analysis, we explained, was the "perfect legal right" of a testator with sound mind "to dispose of his property as he wishes,"[24] a right that includes, as previously noted, the prerogative of disinheriting an heir if

---

20. *Perry*, 114 S.W. at 899.

21. *See* Tex. R. Civ. P. 91a.1.

22. Merrick alleged that Cole "ma[de] Karla take showers with him," during which "the deceased's penis would extend fully"; fondled her breasts while she lay in bed asleep; "repeatedly" touched "her bottom"; and "repeatedly showed interest in her breasts as well." Merrick further pleaded that Cole fre-

quently if not always committed these acts while drunk, also suggesting that Cole may have acted in a mistaken belief that she was her mother, Cole's wife.

23. *Anderson v. Archer*, 490 S.W.3d 175, 179 (Tex.App.–Austin 2016, pet. filed).

24. *Id.* (quoting *Rothermel*, 369 S.W.2d at 923).

the testator sees fit.[25] Further, as Helter emphasizes, the Legislature has not seen fit either to require testators in Cole's alleged position either to provide an inheritance for their victim or to proscribe them from disinheriting the victim. The closest the Legislature has come is to authorize probate courts to bar a parent from inheriting from a child (the reverse of the situation here) who dies intestate (whereas here there is a will) where the parent has been convicted or placed on community supervision for certain crimes against that child, including sexual offenses (and no such criminal charges or dispositions occurred here).[26] In the very least, we can say with certainty that the Legislature has not seen fit—at least as of yet—to authorize, let alone require, the recovery Merrick seeks.[27]

While Merrick insists she can invoke the "public policy exception" to fill these gaps, she advocates an application of that concept that goes far beyond any heretofore recognized by Texas courts. As noted, the "public policy" cases on which Merrick relies have involved the validity of specific conditions in forfeiture clauses,[28] and our independent research confirms that the focus has been on the validity of specific bequests or conditions on bequests.[29] Merrick does not refer us to any case, nor are we aware of any, in which a court has used "public policy" to create a wholly new bequest contrary to the testator's express wishes, let alone any where this was done under circumstances like those here.

At bottom, Merrick's arguments urge us to alter existing Texas law. Whether "public policy" as Merrick perceives it should warrant such a change is the prerogative of the Legislature or the Texas Supreme Court; this intermediate appellate court does not have such say.[30] Unless and until that occurs, Merrick's claim at issue has "no basis in law" and the probate court properly dismissed it under Rule 91a.

Affirmed

---

**25.** *See* Tex. Est. Code § 251.002(b).

**26.** *See id.* § 201.062.

**27.** *See, e.g., Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.") (citation omitted).

**28.** *See supra* note 19.

**29.** *See, e.g., Shields v. Texas Scottish Rite Hosp. for Crippled Children,* 11 S.W.3d 457, 459–60 (Tex.App.–Eastland 2000, pet. denied) (devise to attorney who drafted will was void as against public policy based on Texas State Bar rules governing attorney-client relationships); *Hunt v. Carroll,* 157 S.W.2d 429, 435–36 (Tex.Civ.App.–Beaumont 1941, writ dism'd) (holding provision in father's will that "during the first twenty years if [daughter] remains the wife of [husband] she will receive no part of the estate" did not void will as manifesting intent to induce daughter to divorce her husband, implying that such condition would be contrary to public policy).

**30.** *See, e.g., Anderson,* 490 S.W.3d at 177 ("We must, in short, follow the existing law rather than change it, and we have adhered to that basic limiting principle in a variety of contexts." (citing *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, LP,* 287 S.W.3d 390, 394–95, 398 (Tex.App.–Austin 2009), *rev'd on other grounds,* 343 S.W.3d 112, 120 (Tex. 2011))); *Petco Animal Supplies, Inc. v. Schuster,* 144 S.W.3d 554, 565 (Tex.App.–Austin 2004, no pet.) ("As an intermediate appellate court, we are not free to mold Texas law as we see fit but must instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute.").